**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF VIRGINIA**
**Alexandria Division**

**CHRISTOPHER JOHNSON and**
**SHELBY ZELONIS ROBERSON,**

           **Plaintiffs,**

                                **Civil Action No. 1:25-CV-00165-RDA**

**v.**

**ACXIOM LLC,**

           **Defendant.**

**DEFENDANT ACXIOM LLC'S REPLY IN SUPPORT OF**
**MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM**

## TABLE OF CONTENTS

Page(s)

INTRODUCTION ................................................................................................ 1

ARGUMENT ..................................................................................................... 4

I.    Plaintiffs continue to focus on the allegedly "extensive" nature of the information collected and sold by Acxiom, which is irrelevant to their claims ................................... 4

II.   Acxiom does not "use" individuals' names in any manner beyond collecting and sharing information, and Plaintiffs have not alleged otherwise ........................................ 4

III.  Plaintiffs continue to mischaracterize the "for purpose of trade" prong of Virginia's misappropriation statute ............................................................................. 7

      A.    All Virginia precedent rejects Plaintiffs' proposed statutory interpretation .......... 8

      B.    Plaintiffs' out-of-state "authority" is inapt and unpersuasive ............................ 10

IV.   Plaintiffs' proposed interpretation of the Virginia statues poses serious constitutional problems that can be avoided through a commonsense application of the law ....................................................................................................... 11

V.    Any "use" by Acxiom is purely incidental to the overall transaction ............................ 14

VI.   Plaintiffs' claims under Va. Code § 18.2-216.1 fail because Plaintiffs do not plausibly allege they suffered a monetary "loss." ................................................... 15

## **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*44 Liquormart, Inc. v. Rhode Island*,
  517 U.S. 484 (1996).............................................................................13

*Alston v. Crown Auto, Inc.*,
  224 F.3d 332 (4th Cir. 2000) .........................................................15, 16

*Anderson v. Flour Intercontinental, Inc.*,
  No. 1:19-cv-0289, 2021 U.S. Dist. LEXIS 45526 (E.D. Va. 2021) ...................................8, 11

*Bader v. Cent. Fid. Bank*,
  245 Va, 427 S.E.2d 184 (1993)...................................................................16

*Brooks v. Thomson Reuters Corp.*,
  No. 21cv1418, 2021 WL 3621837 (N.D. Cal. Aug. 16, 2021)..................................................4

*In re Capital One Consumer Data Sec. Breach Litig.*,
  488 F. Supp. 3d 374 (E.D. Va. 2020) ......................................................17

*Comeaux v. First Union Nat. Bank*,
  55 Va. Cir. 181 (Va. Cir. Ct. 2001).........................................................16

*Compton v. Foster*,
  82 Va. Cir. 279 (Va. Cir. Ct. 2011).....................................................14, 15

*Covington Specialty Ins. Co. v. Omega Restaurant & Bar, LLC*,
  666 F. Supp. 3d 528 (E.D. Va. 2023) ....................................................9

*Dobrowolski v. Intelius, Inc.*,
  No. 17 CV 1406, 2018 U.S. Dist. LEXIS 240434 (N.D. Ill. May 21, 2018)...........................5

*E. Lunatic Asylum v. Garrett*,
  68 Va. 163 (1876) ...........................................................................16

*Falwell v. Penthouse Int'l, Ltd.*,
  521 F. Supp. 1204 (W.D. Va. 1981) ...................................................8, 11, 12, 13

*Farris v. Orvis Company, Inc.*,
  No. 2:22cv7, 2022 WL 10477051 (D. Vt. Oct. 18, 2022) ......................................4

*Geiger v. Abarca Family, Inc.*,
  No. 3:21cv771, 2022 U.S. Dist. LEXIS 167087 (E.D. Va. July 29, 2022) ............................14

*Goodweather v. Parekh*,
No. 1:20cv6, 2020 U.S. Dist. LEXIS 253268 (E.D. Va. 2020) (Alston, J.) ............................9

*Griffin v. Oceanic Contractors, Inc.*,
458 U.S. 564 (1982)........................................................................................................17

*Gross v. Madison Square Garden Ent. Corp.*,
No. 23-CV-3380, 2024 WL 103235 (S.D.N.Y. Jan. 9, 2024) .................................11

*In re Hearst Comm'cns State Right of Publicity Statute Cases*,
632 F. Supp. 3d at 625-26.................................................................................10, 11

*Huston v. Hearst Communs.*,
No. 21cv1196, 2022 U.S. Dist. LEXIS 24447 (C.D. Ill. Feb. 7, 2022) ....................4

*IMDb.com v. Becerra*,
962 F.3d 1111 (9th Cir. 2020) .......................................................................13

*Lavery v. Automation Mgmt. Consultants, Inc.*,
360 S.E.2d 336 (Va. 1987).............................................................................9

*Lbla Beauty, LLC v. 11177753 Canada Corporation*,
No. 1:23-cv-665, 2025 WL 904688 (E.D. Va. Mar. 25, 2025) (Alston, J.).............................9

*Lorillard Tobacco Co. v. Reilly*,
533 U.S. 525 (2001).......................................................................................13

*Motise v. Am. Online, Inc.*,
No. 04-1494, 2005 U.S. Dist. LEXIS 36991 (E.D. Va. June 24, 2005) ...................9

*Robert v. City of Norfolk*,
188 Va. 413 (1948) ...............................................................................14, 15

*Rosetta Stone Ltd. v. Google, Inc.*,
676 F.3d 144 (4th Cir. 2012) .......................................................................10

*Rumsfeld v. Forum for Academic and Institutional Rights, Inc.*,
547 U.S. 47 (2006)..................................................................................13, 14

*Smithfield Foods, Inc. v. United Food & Com. Workers Int'l Union*,
585 F. Supp. 2d 789 (E.D. Va. 2008) ......................................................................12

*Sorrell v. IMS Health Inc.*,
564 U.S. 552 (2011)........................................................................................13

*Sykes v. Bayer Pharmaceuticals Corp.*,
548 F. Supp. 2d 208 (E.D. Va. 2008) ......................................................................16

*Town & Country Properties, Inc. v. Riggins*,
    457 S.E.2d 356 (Va. 1995)......................................................................................2, 3, 8, 12, 13

*United States News & World Report, Inc. v. Avrahami*,
    No. 95-1318, 1996 Va. Cir. LEXIS 518 (Va. Cir. Ct. June 23, 1996)........................11, 14, 15

*United States v. Simms*,
    914 F.3d 229 (4th Cir. 2019) .................................................................................................12

*Williams v. Newsweek, Inc.*,
    63 F. Supp. 2d 734 (E.D. Va. 1999) ......................................................................................14

**Statutes**

Va. Code § 8.01-40 .....................................................................................................1, 7, 12, 13

Va. Code § 18.2-216.1 ..................................................................................................1, 7, 3, 15

**Other Authorities**

Federal Rule Civil Procedure 12(b)(6) .........................................................................................17

Restatement (Second) of Torts § 652C cmt. D ...........................................................................5

Defendant, Acxiom LLC ("Acxiom"), by counsel, submits this reply in support of its Motion to Dismiss the Class Action Complaint ("Compl.") filed by Plaintiffs, Christopher Johnson and Shelby Zelonis Roberson.

## INTRODUCTION

Virginia law prohibits the unauthorized "use" of names to draw "trade" to one's business. *See* Va. Code § 8.01-40; Va. Code § 18.2-216.1. Those two statutes thus concern the circumstance where a defendant has used the name or image of a specific Virginia resident for the defendant's own promotional purposes without that person's consent. Acxiom takes no issue with the salutary purpose of those statutes, but that circumstance is not in any way implicated here.

Through this misguided lawsuit, Plaintiffs opportunistically seek to expand Virginia's limited right of publicity statutes far beyond their intended and recognized scope, and to do so in a way that would render any sale of aggregated marketing data that includes a consumer's name a violation of Virginia law. As Acxiom demonstrated in its Motion to Dismiss, that attempt is wholly unsupported by the extensive authority in Virginia (and elsewhere) interpreting and applying right of publicity statutes. That authority has consistently affirmed the Virginia statutes do not apply to sales of lists of names. Plaintiffs' opposition generally ignores that extensive authority, and what little counter "authority" they cite fails to prevent dismissal.

First, Plaintiffs continue to highlight the allegedly "extensive" or "pervasive" scope of data that Acxiom allegedly collects and sells regarding consumers, even though the plain language of the Virginia statutes limits their proscriptions only to the unauthorized use of a "name, portrait or picture." Plaintiffs' continued focus on other the forms of aggregated data sold by Acxiom remains legally irrelevant and an attempt to invite legal error.

Second, Plaintiffs' contention that Acxiom "used" their names fails. Courts consistently hold the sale of a list of names does not constitute the "use" of those names for purposes of Virginia

law and similar statutes nationwide. Acxiom is alleged to have collected and then sold Plaintiffs' names to Acxiom's customers for those customers' own marketing purposes. Plaintiffs' names were not separately "used" by Acxiom to draw trade to Acxiom; those names *were* the product. And while Plaintiffs try to prevent dismissal by pointing to certain Acxiom documents talking about the "use" of its data, those documents make clear the only "use" is Acxiom's sale of aggregated names for its customer's marketing purposes, which does not trigger Virginia law.

Third, to prevail on their claims, Plaintiffs must further demonstrate that Acxiom used their names "for purposes of trade." To try and meet that additional requirement, Plaintiffs argue for a remarkably-broad interpretation of "purposes of trade" that would embrace any commercial sale of names. That attempted construction is squarely contrary to the litany of previously-cited Virginia cases holding that the term "for purposes of trade" understandably must be narrowly construed and involve the solicitation of patronage to the defendant's business. Indeed, Plaintiffs identify *no* Virginia decision supporting their expansive interpretation. And the very few out-of-state cases cited by Plaintiffs are highly distinguishable and provide no support for their position.

Further, Plaintiffs' overbroad interpretation would lead to serious constitutional problems by expanding the Virginia statutes' reach to prohibit a large swath of constitutionally protected speech. Hence, that interpretation must be avoided. Remarkably, Plaintiffs argue that Acxiom's provision of information to its customers is completely unprotected by the First Amendment. That contention ignores the host of decisions applying constitutional protections to sales of data and commercial marketing activities. Plaintiffs' argument also ignores that the Supreme Court of Virginia in *Town & Country Properties, Inc. v. Riggins* upheld the Virginia statutes as constitutional only because the Supreme Court of Virginia found the challenged speech involved the unauthorized use of a plaintiff's name "strictly in a promotional sense to generate interest in

the sale [of the advertised product]," thereby triggering the "statutory privacy protection against exploitation of plaintiff's name." 457 S.E.2d 356, 397 (Va. 1995). _Nothing_ of the sort is alleged here with respect to the aggregated sale of names by Acxiom.

Fourth, even if Plaintiffs could establish an unauthorized "use" for "purposes of trade," Acxiom's inclusion of their names within an aggregated set of data is – at most – merely incidental to the overall business transaction and thus exempted from the statutes' reach. Plaintiffs cannot, and do not, attempt to dispute the core holdings of the many analogous cases cited by Acxiom. Instead, Plaintiffs are left to point to immaterial distinctions in those cases, such as by highlighting the fact that some of those defendants were traditional publishers, that some cases involved a use in an advertisement, and that some cases involved the use of a picture instead of a name. But none of those differences have any bearing on the applicability of the "incidental use" exception.

Fifth, Acxiom explained how Plaintiffs cannot recover under Va § 18.2-216.1 because that statute specifically requires Plaintiffs suffer a monetary "loss," which they have not even attempted to allege. In response, Plaintiffs now argue they suffered a "loss" in the form of the "conversion" of a property interest in their names. That contention was not pled in the Complaint, and it cannot be invoked now. Nor does the tort of "conversion" have any application here, as that tort requires a complete deprivation of control over the property, which Plaintiffs of course cannot plausibly allege occurred with respect to their use of their names. Nor do Plaintiffs allege any "loss" from any attempt to monetize their names. And, the concept that Acxiom committed conversion by selling aggregated data that included Plaintiffs' names would mean all marketing companies are unlawfully engaged in conversion; an absurd construction of the statutes that must be avoided.

Plaintiffs' Complaint must be dismissed with prejudice.

## ARGUMENT

**I.    Plaintiffs continue to focus on the allegedly "extensive" nature of the information collected and sold by Acxiom, which is irrelevant to their claims.**

As an initial matter, Plaintiffs' opposition, just like their Complaint, continues to emphasize the allegedly "extensive" nature of the personal information collected and then sold by Acxiom. (Opp. at 1, 2 n.1, 7-8, 10.)  But, the Virginia right of publicity statutes protect only against the unauthorized use of a name or a portrait/picture – not other forms of data – and Plaintiffs do not allege that their portraits/pictures have been used at all.  Only their "names" are at issue, and their arguments regarding the other information collected and sold by Acxiom remain legally irrelevant.

**II.    Acxiom does not "use" individuals' names in any manner beyond collecting and sharing information, and Plaintiffs have not alleged otherwise.**

Plaintiffs' claims fail from inception because they do not allege any conduct by Acxiom that could qualify as the "use" of their names, as required under both Virginia statutes.

As multiple courts have affirmed in similar contexts, Acxiom's sale of aggregated lists of names is not a "use" of Plaintiffs' names at all.  *See, e.g.*, *Farris v. Orvis Company, Inc.*, No. 2:22cv7, 2022 WL 10477051, at *8 (D. Vt. Oct. 18, 2022) (dismissing a right of publicity claim because in such cases the individual data "*is* the product") (emphasis in original); *Huston v. Hearst Communs.*, No. 21cv1196, 2022 U.S. Dist. LEXIS 24447, at *1 (C.D. Ill. Feb. 7, 2022) (dismissing claim where "Ms. Huston alleges that Hearst made mailing lists of its subscribers available for others to purchase so that they can send advertisements to the subscribers") (citing *United States News & World Report, Inc. v. Avrahami*, No. 95-1318, 1996 Va. Cir. LEXIS 518, at *7 (Va. Cir. Ct. June 23, 1996)); *Brooks v. Thomson Reuters Corp.*, No. 21cv1418, 2021 WL 3621837, at *4-5 (N.D. Cal. Aug. 16, 2021); *Facebook, Inc., Consumer Privacy User Profile Litigation*, 402 F. Supp. 3d 767, 803 (N.D. Cal. 2019) (dismissing the plaintiffs' right of publicity claim because "[t]he allegations about how Facebook shared the plaintiffs information with third parties is

categorically different from the type of conduct made unlawful by this tort, such as using a plaintiff's face or name to promote a product or service."); *Dobrowolski v. Intelius, Inc.*, No. 17 CV 1406, 2018 U.S. Dist. LEXIS 240434, at *3 (N.D. Ill. May 21, 2018) (dismissing the right of publicity claim: "The plaintiffs' identities are not used to promote a separate product—they are used because plaintiffs' identities *are part of the product offered for sale*.") (emphasis added); *see also* RESTATEMENT (SECOND) OF TORTS § 652C cmt. D (a "plaintiff's name is not appropriated by mere mention of it").

Plaintiffs try to get around that extensive authority by asserting they have sufficiently pled that Acxiom is allegedly "using" their names for purposes beyond the sale of marketing lists.

They first do so by pointing to statements from certain Acxiom documents. Those attempts fall flat. Plaintiffs point to an isolated statement from Acxiom's Consumer Data Access Report / Explanation ("Data Access Report") that "Acxiom may use [data] for both marketing and reference product offerings." (Opp. at 2.) Plaintiffs ignore, however, that the Data Access Report makes clear that it is provided to individuals in connection with a "request to know the information that Acxiom has collected, sold, shared or disclosed about you," which clarifies that the statement of any "use" is limited to collection, sale, sharing, and disclosure of the data identified. *See* Compl. Ex. 2 (ECF No. 1-2) at 1 (emphasis added). The Data Access Report then proceeds to separately list the "Data Collected/Requested"; "Data Sold/Shared"; and "Data Disclosed," further confirming Acxiom's "use" of consumer data is selling/sharing that data with its customers. *Id.*

Plaintiffs also point to statements in Acxiom's US Data Privacy Notices which they claim are "admissions" that Acxiom "uses" data in some way other than simply transmitting it to third parties. (Opp. at 3-4.) That is equally meritless. The Privacy Notices explicitly make clear that the "commercial purpose for which [Acxiom] collect[s]/process[es] personal data is to provide

marketing and advertising products" to its customers. *See* Acxiom U.S. Data Product Privacy Notices, *available at* https://www.acxiom.com/privacy/us/ (last accessed May 22, 2025). In other words, Acxiom's products provide data to its *customers* for those *customers* to "use" for their own marketing and advertising efforts. The Privacy Notices also clearly state "Acxiom has sold personal information it has collected to our third-party clients for *their business and commercial purposes*" and "Acxiom licenses personal information *to our clients* for the purpose of enabling and improving marketing and advertising campaigns . . . ." *Id.* Again, all subsequent use of the names sold is by Acxiom's customers. *Id.*

Plaintiffs next argue they have pled factual allegations in the Complaint of "use" that go beyond Acxiom's sale of aggregated names, but that argument also falters based on the text of their own allegations. In fact, Plaintiffs began their Complaint by alleging that Acxiom "has been collecting, processing, and selling or licensing for purposes of trade access to a large volume of data linked to and including Plaintiffs names and the names of Virginia residents . . . ." Compl. ¶ 2. Then, throughout their Complaint, Plaintiffs repeatedly alleged Acxiom sells aggregated lists of consumer data to its customers for those customers to use for marketing purposes. *Id.* ¶¶ 43-52, 73-76. Plaintiffs, for instance, claim Acxiom allegedly sells aggregated consumer information "to solve customer marketing challenges," including to identify "high-value customers" and to "optimize prospecting." *Id.* ¶¶ 73-74, 76. That marketing-related function was emphasized with respect to each of the identified products Plaintiffs now argue allows them to survive dismissal:

- Acxiom's "InfoBase gives **marketers** the customer and prospect information to make smarter, faster marketing decisions." *Id.*

- Acxiom's "Unified Data Layering" product "enables seamless integration of **marketing and advertising** technologies to acquire, engage, and retain customers." *Id.* ¶ 43 n.15.

- Acxiom's "Customer Intelligence Cloud" is a "comprehensive suite of services and integrated **marketing** cloud platforms." *Id.* ¶ 44.

6

- Acxiom's "Real ID" matches individuals' data so "*marketers* can use [that] service to inform all customer engagements across the [marketer's] business," including to facilitate the customer's *"direct mail" activities*. *Id.* ¶¶ 45, 52.

- "Acxiom's contracts with the federal government provide additional evidence that Acxiom is directly *selling . . . personally identifiable data* and related services." *Id.* ¶ 79.

- Acxiom's "Audience Solutions" product "develop[s] targeted audience segments for its customers," which "allows *Acxiom's customers to connect more effectively with their own prospective customers*. *Id.* ¶¶ 66-67.

- Acxiom's "Personix" products deliver "industry-leading data . . . *[to] provid[e] marketers the foundation needed to design and execute highly successful marketing programs*" by placing individuals into market "segments." *Id.* ¶ 71.[1]

At bottom, there are no facts plausibly alleged to support any "use" of Plaintiffs' names besides selling them (along with many others) to Acxiom's customers. Because that type of sale is not the kind of "use" proscribed by Virginia law, the claims fail.

## III. Plaintiffs continue to mischaracterize the "for purpose of trade" prong of Virginia's misappropriation statute.

Even if Acxiom's selling/sharing of aggregated data could constitute a "use" of Plaintiffs' names, Plaintiffs must also establish that use was either in an "advertisement" or "for purposes of trade." Va. Code § 8.01-40; Va. Code § 18.2-216.1. Plaintiffs opt for the latter prong[2] by arguing

---

[1] Certain other products identified by Plaintiffs in their opposition have no bearing on the claims asserted in this case. Acxiom's "Verify" and "Authenticate" products, for instance, allow *customers* to input names for verification. *Id.* ¶ 80. The data comes from the customer. Similarly, Acxiom's "collaboration solutions . . . allo[w] two or more organizations to share their first-party data," with that first-party data again coming from Acxiom's customers. *Id.* ¶ 75. Acxiom also allegedly offers "analytics solutions and services . . . to solve customer marketing challenges," including to address customer acquisition, retention . . . [and] help clients identify high-value customers likely to attrit." *Id.* ¶¶ 73-74. Those analytics products implicate customer marketing strategy across customers' entire businesses, and not any specific use of Plaintiffs' names to draw trade to Acxiom. Fundamentally, none of those "authentication," "analytics," or "collaboration" products relate to any claim that Acxiom used Plaintiffs' names in any specific way.

[2] Plaintiffs concede they "do not allege that Acxiom . . . used Plaintiffs' names in an advertisement." Opp. at 9.

for an incredibly broad interpretation of the phrase "for purposes of trade" that is contrary to all applicable Virginia precedent and unsupported by the statutes' clear legislative purpose. Plaintiffs' interpretation must be rejected.

**A.      All Virginia precedent rejects Plaintiffs' proposed statutory interpretation.**

Plaintiffs ask this Court to interpret the phrase "for purpose of trade" to encompass any "use" related to "the business of buying and selling" of names. (Opp. at 4.) That proposal finds no support under Virginia law.

Initially, the "purpose of trade" prong has been consistently affirmed to be a *narrower* category than the "advertising" purposes prong that Plaintiffs concede is not implicated here. *E.g.*, *Town & Country Properties, Inc. v. Riggins*, 457 S.E.2d 356, 362 (Va. 1995) ("Claims based . . . on the use of a name 'for advertising purposes' have received a more liberal treatment by the courts than those based on use 'for purposes of trade.'"); *see also Falwell v. Penthouse Int'l, Ltd.*, 521 F. Supp. 1204, 1210 (W.D. Va. 1981) ("Because the Virginia statute is in derogation of the common law, it must be strictly construed."). Within that narrow scope, and directly refuting Plaintiffs' proposed interpretation, Virginia courts have specifically rejected interpretations of the phrase "for purpose of trade" by which "*any* use of a Plaintiff's name in *any* commercial context would give rise to liability." *Anderson v. Flour Intercontinental, Inc.*, No. 1:19-cv-0289, 2021 U.S. Dist. LEXIS 45526, at *81 (E.D. Va. 2021) (emphases in original); *see also Falwell*, 521 F. Supp. at 1210 ("Obviously, everything that appears in a magazine is placed with the intention of increasing sales. But if the 'purposes of trade' requirement were to be so broadly construed, it would conflict with the limited legislative goal in enacting a statute that creates a cause of action which did not exist at common law."). Plaintiffs ignore those cases.

Moreover, despite Plaintiffs' attempt to apply the phrase "for purpose of trade" to any "buying or selling" of names, courts have consistently limited application of the "purpose of trade"

prong of the statutes to instances involving a "commercial benefit" gained by using a plaintiff's name, picture, or portrait to "solicit patronage" and "draw trade" to the defendant's business. *See, e.g.*, *Covington Specialty Ins. Co. v. Omega Restaurant & Bar, LLC*, 666 F. Supp. 3d 528, 538 (E.D. Va. 2023) ("In determining whether a misappropriation violates the right of publicity, the inquiry is whether the defendant 'received a commercial benefit from use of Plaintiff's name or likeness that, without Plaintiff's image, he would not otherwise have received.'"); *Goodweather v. Parekh*, No. 1:20cv6, 2020 U.S. Dist. LEXIS 253268, at *28 (E.D. Va. 2020) (Alston, J.) ("[D]etermining whether the use was 'for the purposes of trade'" requires the court to consider "whether the name was used *to draw trade* to an entity.") (emphasis added); *Motise v. Am. Online, Inc.*, No. 04-1494, 2005 U.S. Dist. LEXIS 36991, at *10 (E.D. Va. June 24, 2005) ("Plaintiff must allege that Defendant used his name specifically for the purpose of advertising or solicitation for patronage of a product."). Plaintiffs' proposed interpretation is far broader than Virginia courts have ever allowed. Plaintiffs ignore all this authority as well.

Finally, Plaintiffs' attempt to apply the Virginia statutes to any sale of an individual's name is also belied by the Supreme Court of Virginia's explanation that the interest protected by the Virginia statutes is "a kind of trademark in [a plaintiff's] likeness." *Lavery v. Automation Mgmt. Consultants, Inc.*, 360 S.E.2d 336 (Va. 1987) (applying right of publicity statute to government contractor's unauthorized use of plaintiff consultant's name in connection with a contract proposal, falsely suggesting the consultant was involved in the project). That analogy is telling. Under both federal and Virginia law, trademark infringement is only possible where the defendant "used the [plaintiff's] mark in a manner likely to confuse consumers" as to "*the source* of the goods or services involved." *Lbla Beauty, LLC v. 11177753 Canada Corporation*, No. 1:23-cv-665, 2025 WL 904688, at *7 (E.D. Va. Mar. 25, 2025) (Alston, J.) (emphasis added) (citing *Lone Star*

*Steakhouse & Saloon, Inc. v. Alpha of Virginia, Inc.*, 43 F.3d 922, 930 n.10 (4th Cir. 1995), and

*U-Haul Int'l, Inc. v. WhenU.com, Inc.*, 279 F. Supp. 2d 723, 727 (E.D. Va. 2003)).  By identifying

the interest protected by the right of publicity statutes as a "trademark" right, the Supreme Court

of Virginia has made clear that the statutes are intended to apply when a name, picture, or portrait

is used in a way that implies that the plaintiff has somehow endorsed the product being sold.  The

sale of a name as part of a larger, aggregated set of data does not fit that scenario.  *See, e.g.*, *Rosetta

Stone Ltd. v. Google, Inc.*, 676 F.3d 144, 154 (4th Cir. 2012) (discussing permissible uses of

trademarks as including when the use is "referential or nominative in nature, . . . in which the

defendant uses the plaintiff's trademark to identify the plaintiff's own goods" and "does not create

'confusion about the source of [the] defendant's product'").

### B.    Plaintiffs' out-of-state "authority" is inapt and unpersuasive.

Unable to reconcile their interpretive position of "for purpose of trade" with established

Virginia law, Plaintiffs principally point to an Illinois district court decision, *Clearview AI, Inc.,

Consumer Priv. Litig.*, 585 F. Supp. 3d 1111 (N.D. Ill. 2022), which is highly distinguishable,

conclusory, and has been rightly criticized for failing to address the issues requiring dismissal here.

First, the product at issue in *Clearview* was a database of searchable images, which allowed

Clearview's customers to search for pictures of specific individuals.  *Id.* at 1118.  That direct-to-

consumer sale of individual-specific images has no equivalent to Acxiom's business-to-business

sales of aggregated lists of names to its customers.

Second, while *Clearview* concluded in a single sentence – without <u>any</u> accompanying

analysis – that the "sale" of a portrait constituted a use "for purposes of trade," the *Clearview* court

did not consider whether a use "for purposes of trade" requires that "the 'product' must be separate

from the identities themselves."  *In re Hearst Comm'cns State Right of Publicity Statute Cases*,

632 F. Supp. 3d at 625-26 (criticizing *Clearview* for failing to address that issue).  The *Clearview*

10

decision is thus contrary to _many_ other right of publicity cases that have consistently rejected such claims in the context of "a mass aggregation of personal data that was subsequently sold," and which recognize that the alleged use of a name or likeness must be for the purpose of promoting the sale of a product _other than_ the sale of the aggregated data itself. _Id._ (citing _Brooks_, 2021 WL 3621837, at *4-5).

Plaintiffs also cite to another non-binding, out-of-state decision: _Gross v. Madison Square Garden Ent. Corp._, No. 23-CV-3380, 2024 WL 103235 (S.D.N.Y. Jan. 9, 2024), which involved a defendant's use of the plaintiffs' biometric data to prevent their access to the defendant's venues, allegedly in violation of several New York laws. _Id._ at *6-8. _Gross_ did not address Virginia law at all. The decision also is irrelevant to the issues here. _Gross_ held the defendant's use of biometric data was _not_ a use "for purposes of trade" because the defendant did not earn any profit. _Id._ But the fact that earning a profit was a _necessary_ element of demonstrating a use for "purposes of trade" does not mean profit is _sufficient_ to establish that a use was for "purposes of trade," which is distinctly not the law in Virginia. _See, e.g._, _Anderson_, 2021 U.S. Dist. LEXIS 45526, at *81 (rejecting constructions of "purposes of trade" by which "_any_ use of a Plaintiff's name in _any_ commercial context would give rise to liability"); _Avrahami_, No. 96-203, 1996 Va. Cir. LEXIS 518, at *17 (sales/rentals of mailing lists were not "for the purpose of trade" under the Virginia statutes); _Falwell_, 521 F. Supp. at 1210 (rejecting a claim under the Virginia statutes, even though "everything that appears in a magazine is placed with the intention of increasing sales").

## IV.    Plaintiffs' proposed interpretation of the Virginia statues poses serious constitutional problems that can be avoided through a commonsense application of the law.

In their opposition, Plaintiffs also fail to substantively engage with Acxiom's extensive authority noting how their expansive interpretation of the Virginia statutes would raise serious constitutional concerns, and how the doctrine of constitutional avoidance thus requires construing

the statutes narrowly. Plaintiffs devote just one page of their opposition to Acxiom's constitutional avoidance argument, even then missing the relevant point. Acxiom does not argue that the Virginia statutes, as previously and narrowly interpreted by courts, are unconstitutional. Instead, it is Plaintiffs' new, overbroad interpretation of the statutes would render them unconstitutional.

The doctrine of constitutional avoidance compels this Court to reject an interpretation of Virginia law that could render it unconstitutional if an alternative interpretation would prevent those problems. *See, e.g.*, *Smithfield Foods, Inc. v. United Food & Com. Workers Int'l Union*, 585 F. Supp. 2d 789, 807 (E.D. Va. 2008) (citing *Edward J. DeBartolo Corp. v. Florida Gulf Coast Building & Constr. Trades Council*, 485 U.S. 568, 575 (1988)); *United States v. Simms*, 914 F.3d 229, 251 (4th Cir. 2019) (quoting *Almendarez-Torres v. United States*, 523 U.S. 224, 238 (1998)) (the canon of "constitutional avoidance serves the 'basic democratic function of maintaining a set of statutes that reflect, rather than distort, the policy choices that elected representatives have made.'"). Indeed, courts have invoked that doctrine when considering the Virginia statutes here. *See Falwell*, 521 F. Supp. at 1210 (avoiding giving "for purpose of trade" an "an unnecessarily broad construction" because that would "intrude on important constitutional freedoms").

Acxiom also explained why a narrow interpretation of the statute has passed constitutional muster, but why a broad interpretation would not. For instance, in *Town & Country Properties, Inc. v. Riggins*, the Supreme Court of Virginia dismissed an as-applied constitutional challenge to Va. Code § 8.01-40 because the circumstance presented did not target "informational" speech. 457 S.E.2d at 363. In *Riggins*, the Supreme Court of Virginia was faced with an unauthorized advertisement that used the name of a prominent football player to draw attention to a real estate listing, which is activity that lies at the core of the statute's prohibitions. *Id.* The Court first noted "[t]he First Amendment's concern for commercial speech is based on the informational function

12

of advertising." *Id.* (quoting *Central Hudson Gas & Elec. Corp. v. Public Serv. Comm'n of New York*, 447 U.S. 557, 563 (1980)).  The Court then held that the promotional flyer was not "informational" because the plaintiff's name was being used exclusively for its endorsement value, which was being "exploited." *Id.*  Put another way, the Court found the statute to be constitutional because it targeted speech that fell below the threshold of even protected commercial speech. *Id.*

By contrast, Plaintiffs propose an interpretation so broad that it would ensnare the types of marketing-related activities that have long been protected by the First Amendment. *See, e.g., Sorrell v. IMS Health Inc.*, 564 U.S. 552, 568 (2011) (sale of pharmacy records); *Lorillard Tobacco Co. v. Reilly*, 533 U.S. 525, 528 (2001) (regulation of tobacco product marketing); *44 Liquormart, Inc. v. Rhode Island*, 517 U.S. 484, 501 (1996) (holding that the price of beer is protected informational speech); *IMDb.com v. Becerra*, 962 F.3d 1111, 1120 (9th Cir. 2020) (protecting dissemination of "date of birth or age information").[3]  This Court should avoid that outcome and can easily do so here. *See, e.g.*, *Falwell*, 521 F. Supp. at 1210.

Plaintiffs next attempt to characterize Acxiom's activity as "conduct, not speech," which Plaintiffs assert eliminates all First Amendment concerns.  (Opp. at 11.)  For that proposition, Plaintiffs cite *Rumsfeld v. Forum for Academic and Institutional Rights, Inc.*, 547 U.S. 47 (2006). But *Rumsfeld* involved a law that required law schools to provide military recruiters equal access to their campuses as other recruiters as a condition for federal funding. *Id.* at 66.  It did not involve speech.  Indeed, the U.S. Supreme Court noted that the equal access law did not prevent the law schools from continuing to express their disagreement with military policies, and that it therefore

---

[3] Plaintiffs failed to address any of those previously-cited constitutional decisions.  Instead, Plaintiffs merely point to *Riggins* for the unremarkable proposition that Virginia courts have previously held that a <u>narrow</u> interpretation of Va. Code §§ 8.01-40 in circumstances lying at the core of the statute's purposes is constitutional.  But that holding says nothing about whether the broader interpretation now advanced would pass constitutional muster (and it would not).

it did not regulate the law schools' speech. *Id.* That is nothing like the circumstances presented here, where Plaintiffs seek to expand Virginia's right of publicity statutes to restrict Acxiom from communicating certain types of informational content to its customers.

**V.    Any "use" by Acxiom is purely incidental to the overall transaction.**

Even assuming Acxiom's sale of Plaintiffs' names within marketing lists was "using" them for "purpose of trade," Acxiom also previously identified in its opening brief how any such "use" of Plaintiffs' names would be, at most, "incidental" to the commercial transaction. Acxiom cited a host of cases supporting that established incidental use exception. (*See* Mot. at 15-17.) Plaintiffs try to distinguish the cases Acxiom cited, but fail to persuasively distinguish any of them.

Plaintiffs first try to distinguish *Geiger v. Abarca Family, Inc.*, No. 3:21cv771, 2022 U.S. Dist. LEXIS 167087, at *2 (E.D. Va. July 29, 2022), on the basis of the fact that the case involved a "publisher" that used the plaintiffs' images "in advertising," whereas "Plaintiffs do not allege that Acxiom is a publisher that used Plaintiffs' names in an advertisement." (Opp. at 9.) That attempted distinction is irrelevant. The "incidental use" exception applies to both "advertising" and uses for "purposes of trade." *E.g.*, *Compton v. Foster*, 82 Va. Cir. 279, 281 (Va. Cir. Ct. 2011) (applying the "incidental use" exception even where there was no use in an advertisement). Plaintiffs also provide no principled reason why the "incidental use" exception should be limited to publications made by traditional "publishers," as opposed to any defendant that allegedly "published" a name in the sense of disclosing it to another party. *See Avrahami*, 1996 Va. Cir. LEXIS 518, at *17-18 (applying incidental use exception to inclusion of a name in a sold mailing list); *cf. Robert v. City of Norfolk*, 188 Va. 413, 420 (1948) ("[T]he word 'publish' is defined as meaning: 'to bring before the public as for sale or distribution.'").

Plaintiffs next attempt to distinguish *Williams v. Newsweek, Inc.*, 63 F. Supp. 2d 734, 737 (E.D. Va. 1999), on the basis that *Williams* involved the use of the plaintiffs' "portrait" without

any mention of his "name." (Opp. at 9.)  But the right of publicity statutes apply to uses of names, pictures, *and* portraits, and the "incidental use" exception applies to all three types of personal data.  *See, e.g.*, *Avrahami*, 1996 Va. Cir. LEXIS at 518.

Plaintiffs' next attempt to distinguish *Compton v. Foster*, 82 Va. Cir. 279, 283 (Russell Cir. Ct. 2011), by claiming the case involved "a publication," but without any explanation as to how that is a relevant difference under the statutes.  (*See* Opp. at 10.)  In any event, Acxiom's sale of information is also a "publication" under Virginia law.  *Robert*, 188 Va. at 420.

Finally, Plaintiffs seek to distinguish *Avrahami*, 1996 Va. Cir. LEXIS at 518, which involved the sale of names as part of a mailing list, by arguing the plaintiff's recovery in that case was barred by the "unclean hands" doctrine.  (Opp. at 10.)  But *Avrahami* identified *multiple* independent grounds to dismiss the plaintiff's claim, including that the "incidental" "use" of a name as part of a mailing list is categorically excluded from the right of publicity statute's protection.  *Id.* at *17-18.  Plaintiffs further argue Acxiom's alleged "use" in this case is somehow more "persistent, pervasive, and invasive" than what existed in *Avrahami*, but *Avrahami*'s holding did not hinge on the number of names included on the list or the other data accompanying the sold names.  *See generally id.  Avrahami* remains directly applicable here.

## VI.    Plaintiffs' claims under Va. Code § 18.2-216.1 fail because Plaintiffs do not plausibly allege they suffered a monetary "loss."

Lastly, Acxiom demonstrated that Plaintiffs' claims under Va. Code § 18.2-216.1 further fail because Plaintiffs do not allege that they suffered a monetary "loss," as required.

In making that argument, Acxiom identified how the Fourth Circuit has interpreted the "plain language" of "loss" to "clearly preclude[e] a lawsuit by a person who failed to allege an actual monetary loss was incurred.  *Alston v. Crown Auto, Inc.*, 224 F.3d 332, 336 (4th Cir. 2000) (affirming summary judgment on a Virginia Consumer Protection Act claim, where the damages

provision identically provides that "[a]ny person who suffers loss as the result of a violation . . . shall be entitled to . . . recover actual damages," because the record showed all allegedly excess fees plaintiff had paid were reimbursed with interest).  Plaintiffs attempt to avoid *Alston* by noting the decision hinged on the fact that the alleged monetary loss had already been reimbursed.  (Opp. at 13.)  That misses the point.  *Alston* stands for the proposition that a monetary loss of some kind is required for a plaintiff to recover.  In *Alston*, the alleged monetary loss had already been repaid, thereby negating the claim, but here Plaintiffs fail to allege *any* monetary loss to begin with.

Plaintiffs then argue that, even if a monetary loss is required, they suffered such a loss because Acxiom has committed "conversion" of their property interest in their names.  (Opp. at 13.)  That conclusory and legally-unsupported argument fails for multiple reasons.

First, nothing in that regard is pled in the Complaint, which alone is fatal.  *Sykes v. Bayer Pharmaceuticals Corp.*, 548 F. Supp. 2d 208, 214 n.3 (E.D. Va. 2008) (rejecting argument raised in opposition brief that was not plead in complaint because it is "axiomatic" that "a party may not amend its complaint in a brief opposing a motion to dismiss").

Second, the tort of conversion requires a complete deprivation of dominion or control over the property.  *E. Lunatic Asylum v. Garrett*, 68 Va. 163, 174 (1876) (the effect of conversion "is to deprive the owner entirely of his property"); *see also Bader v. Cent. Fid. Bank*, 245 Va, 286, 289, 427 S.E.2d 184, 186 (1993) (same); *Comeaux v. First Union Nat. Bank*, 55 Va. Cir. 181, 182 (Va. Cir. Ct. 2001) ("One of the elements of a conversion action is the wrongful exercise over another's goods which deprives that person of possession.").  Plaintiffs do not allege that they lost complete control/possession over their names, which they clearly have not.

Third, Plaintiffs also fail to allege they ever tried to sell or had otherwise monetized their own names, which also would be necessary to establish any monetary "loss" from the alleged

conversion. *See, e.g.*, *In re Capital One Consumer Data Sec. Breach Litig.*, 488 F. Supp. 3d 374, 403 (E.D. Va. 2020) (dismissing claims based on alleged loss of value of personal information, including plaintiffs' names, because there were "no allegations that Plaintiffs attempted to sell their [personal] information and were refused a sale because of . . . the Data Breach").

Finally, the idea that Acxiom has committed "conversion" simply by selling aggregated data that includes Plaintiffs' names would mean that all marketing companies are engaged in "conversion," which is plainly an absurd conclusion that is inconsistent with the core intent of the statute. *See, e.g.*, *Griffin v. Oceanic Contractors, Inc.*, 458 U.S. 564, 575 (1982) ("[I]nterpretations of a statute which would produce absurd results are to be avoided if alternative interpretations consistent with the legislative purpose are available.").

## CONCLUSION

WHEREFORE, Acxiom LLC requests that the Court enter an Order: (1) granting Acxiom LLC's Motion to Dismiss for Failure to State a Claim; (2) dismissing with prejudice Plaintiffs claims for failure to state a claim for relief under Fed. R. Civ. P. 12(b)(6); and (3) granting Acxiom LLC such other and further relief as the Court deems appropriate.

Dated: May 28, 2025                    ACXIOM LLC

                                       By: */s/   Timothy J. St. George*
                                           Timothy J. St. George (VSB No. 77349)
                                           David N. Anthony (VSB No. 31696)
                                           Noah J. DiPasquale (VSB No. 96519)
                                           TROUTMAN PEPPER LOCKE LLP
                                           1001 Haxall Point
                                           Richmond, VA  23219
                                           Telephone: (804) 697-1254
                                           Facsimile: (804) 698-6013
                                           Email: tim.st.george@troutman.com
                                           Email: david.anthony@troutman.com
                                           Email: noah.dipasquale@troutman.com

                                           *Counsel for Defendant, Acxiom LLC*